THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LINE CONSTRUCTION BENEFIT FUND, A HEALTH AND WELFARE FUND, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 07C 0950 ) |
| ALLIED ELECTRICAL CONTRACTORS, INC., A Tennessee Corporation, | ) Judge Pallmeyer ) Mag. Judge Ashman ) |
| Defendant. | ) |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF STANDING AND/OR FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff, LINE CONSTRUCTION BENEFIT FUND, ("Fund") by and through its attorney, Robert E. Greenberg of Asher, Gittler, Greenfield & D'Alba, Ltd., hereby submits Plaintiff's Response to Defendant, ALLIED ELECTRICAL CONTRACTORS, INC.'s ("Allied") Motion to Dismiss and Partial Summary Judgment.

**I.    Defendant's Admissions of Fact and Proper Use of Precedent Dictates that Defendant's Motion to Dismiss be Denied.**

Defendant admits to being a member of the National Electrical Contractors Association ("NECA"), see Def.'s Statement Facts, ¶3, and that Defendant understood NECA to have the authority to negotiate a collective bargaining agreement with various unions, see Def.'s Statement Facts, ¶8; Eskridge Dep., pp. 14-15. Defendant understood the terms of the Collective Bargaining Agreement ("CBA"), see Def.'s Statement Facts, ¶6, and made contributions to Plaintiff beginning April 1993, see Eskridge Dep., p. 11. Defendant asserts, however, that "Defendant was not required to make contributions at any time prior to December 7, 2006, when

1

it signed the Letter of Assent." See Def.'s Memo., p. 5.

To the contrary, Defendant remains bound by the terms of the agreements with NECA, and subsequent agreements with Defendant. Defendant simply became delinquent for monthly contributions in July, August and December 2006, and January and February 2007. Ultimately, a written agreement existed in the form of the CBA, see Ex. A, and Trust Agreement, see Ex. B, to which Defendant was a party by virtue of its membership in NECA. Defendant cannot legitimately take the position that Defendant was never bound to contributions prior to December 7, 2006, given the undisputed fact that Defendant made contributions to Plaintiff as far back as April 1993. If in fact there was no valid agreement in place until December 7, 2006, Defendant would have been committing unlawful acts by making such past payments. See 29 U.S.C. §302(c)(5)(B). In addition, Defendant's claim that contributions before December 7, 2006 were not required fails to address Defendant's delinquent payments after December 7, 2006.

II.     **Line Construction Benefit Fund has Standing to Sue under the Employee Retirement Income Security Act, and its Amendments.**

Seventh Circuit Court precedent supports Plaintiff's assertions of standing and relief, and Defendant's use of Seventh Circuit Court dicta and sister Circuit precedent are misplaced as contrary to governing law in this Circuit. The Seventh Circuit Court recognizes the standing of multiemployer plans to sue under the Employee Retirement Income Security Act ("ERISA") for the recovery of delinquent contributions. *See Central States, Southeast and Southwest Areas Pension Fund v. Schilli Corporation,* 420 F.3d 663, 670 (7th Cir. 2005); *Peoria Union Stock Yards Company Retirement Plan v. Penn Mutual Life Insurance Company,* 698 F.2d 320,326 (7th Cir. 1983); *Health Cost Controls v. Bichanich*, 968 F.Supp 396, 398 (N.D. Ill 1997). An ERISA fiduciary includes anyone who "exercises substantial control over Plan

assets." *See Health Cost,* 968 F.Supp at 398. Similar to the Northern District Court of Illinois, other district courts in the Seventh Circuit share this interpretation of Seventh Circuit precedent in allowing multiemployer plans to sue under ERISA for the recovery of delinquent contributions. *See Milwaukee Carpenters Fund v. Phillip Morris*, 70 F.Supp.2d 888, 893-894 (E.D. Wis. 1999); *Biomet, Inc. v. Black*, 51 F.Supp.2d 942, 946-947 (N.D. Ind. 1999).

Defendant cites *Winstead v. J.C. Penney*, 933 F.2d 576 (7th Cir. 1991), in opposition to Plaintiff's claim of standing. See Def.'s Memo., p. 4-5. However, *Winstead* did not involve a plan's recovery of delinquent contributions from an employer, but rather was a dispute between two plans, evoking special considerations. *See id.*, 933 F.2d at 579. Furthermore, the court in *Winstead*, immediately qualified the statement on which Defendant now relies, by stating it to be "of no consequence." *See id.* at 579 ("Whether...the plan itself is a fiduciary under ERISA...is of no consequence.") Defendant also cites *Pressrooms Unions-Printers League Fund v. Continental Assur. Co.*, 700 F.2d 889 (2nd Cir. 1983)*,* and *Local 591 v. Nor-Cal Plumbing, Inc.*, 185 F.3d 978 (9th Cir. 1999), for the proposition that the Northern District Court of Illinois should not recognize Plaintiff's standing to sue. See Def.'s Memo., p. 3 ("the *Nor-Cal Plumbing* court rightly reasoned that "the statute suggests that the 'person' and the 'plan' must be separate entities," since the statute uses the verbiage, "a person is a fiduciary with respect to a plan.") (emphasis redacted). Not only are these cases not authoritative, but their statutory interpretations are inconsistent with the approach taken in the Seventh Circuit. While the Second and Ninth Circuit Courts used a purely textual approach in *Pressroom*, 700 F.2d at 891, and *Nor-Cal*, 185 F.3d at 981-984, the courts in the Seventh Circuit understand the term "fiduciary" to include anyone who "exercises substantial control over Plan assets." *Health Cost,* 968 F.Supp at 398 .

In the end, Defendant merely attempts to foreclose Plaintiff's recovery of delinquent contributions, by using a dicta phrase from a distinguishable case, instead of more recent precedent. See Def.'s Memo., p. 4 ("It is important to note that the Court of Appeals for the Seventh Circuit commented approvingly of the *Pressroom* court's reasoning in [*Winstead*]. In that case, the Seventh Circuit noted that the Second Circuit's reasoning in *Pressroom* was "well-founded in the language of the statute… ."). Ultimately, Plaintiff maintains a multiemployer plan in accordance with a CBA and Trust Agreement, and controls plan contributions. Therefore, Plaintiff properly falls within the scope of the Seventh Circuit Court's understanding of "fiduciary" under ERISA.

**III.    The Lack of a Signed Letter of Assent does not Circumvent Defendant's Responsibilities under the Collective Bargaining Agreement.**

Defendant was obligated to make regular payment of contributions to Plaintiff through its membership in NECA; however, Defendant asserts that "[p]ursuant to Section 302(c)(5) of LMRA, a multiemployer benefit fund cannot maintain a successful delinquency action if there is no valid "written agreement" because it would violate Section 302(a) of LMRA." See Def.'s Memo., p. 5. Even though Section 302(c)(5)(B) does place restrictions on employer contributions, current authoritative precedent and the facts of this case do not lead to the conclusion held by Defendant. See Def.'s Memo., p. 8 ("the Plan failed to strictly adhere to the structural mandates of LMRA."). Contrary to Defendant's assertion that a signed letter of assent was necessary, see Def.'s Memo., p. 8, the "written agreement" requirement of Section 302(c)(5)(B) of LMRA was met with the establishment of the CBA and Trust Agreement, and also Defendant's past performance in accordance with these written agreements. *See Bricklayers Local 21 Pension Fund v. Banner Restoration, Inc.*, 385 F.3d 761, 767 (7th Cir. 2004).

Defendant's use of non-authoritative precedent actually either supports Plaintiff's position or has been expressly refuted by the Seventh Circuit Court. Furthermore, Seventh Circuit precedent is sufficiently established regarding "written agreement" requirements under LMRA, making non-authoritative analogies unnecessary.

### A. Defendant Misrepresents Precedent as Supporting a Requirement for a Signed Letter of Assent.

The first case cited by Defendant in support of its "written agreement" claim is a case from the Eastern District Court of Michigan. Def.'s Memo., p. 5 (citing *Trustees of Flint Michigan Laborer's Pension Fund v. In-Puls*, 835 F.Supp. 972, 974 (E.D. Mich. 1993)). The court in *Trustees of Flint* actually found that "[t]he company's actions in accordance with the CBA…suggest that [the company's president] shared this understanding of [the company's] responsibilities." *See id.* at 975. Similarly, Defendant's actions in accordance with the CBA suggests that Mr. Michael Eskridge shared this understanding of Allied's responsibilities. Moreover, the Seventh Circuit Court has held that "[o]ur precedent makes clear…a signature to a collective bargaining agreement is not a prerequisite to finding an employer bound to that agreement." *See Bricklayers,* 385 F.3d at 767.

The question then turns specifically to the presence of a "written agreement," and whether Defendant's lack of a signed Letter of Assent forecloses Plaintiff's ability to recover otherwise delinquent contributions. Again, Defendant uses non-authoritative precedent to claim a signed Letter of Assent was necessary to satisfy the "written agreement" requirement of Section 302(c)(5) of LMRA. See Def.'s Memo., p.9 ("this case is much more similar to *Moglia v. Geohegan*, 403 F.2d 110 (2nd Cir. 1986)."); Def.'s Memo., p. 8 (citing *Merrimen v. Paul F. Rost Electric, Inc.*, 861 F.2d 135, 137 (6th Cir. 1988)).

Even though Defendant does cite within the Seventh Circuit to bolster the interpretations made by other Circuits, see Def.'s Memo., p.9 (citing *Gariup v.Birchler Ceiling & Interior Co.,* 777 F.2d 370, 375 (7th Cir. 1982)), *Gariup*, does not stand for the proposition that a signed letter of assent is required.  The court in *Gariup* focused on the activities of the employer, whereby the employer's past performance bound it to the future performance of plan contributions. *See id.* at 376 ("As previously noted, the district court determined that [the employer] had become a party to these agreements through its course of conduct...").  Furthermore, the Seventh Circuit Court has since explicitly distinguished *Gariup* as not standing for the proposition that a signed letter of assent is required. *See Bricklayers,* 385 F.3d at 770-771 ftn. 7 ("[S]ection 203(c)(5)(B) does not require a *signed* agreement." (citing *Gariup*, 777 F.2d at 376 )).  Moreover, the court in *Bricklayers* also expressly recognized that *Merrimen* and *Moglia*, *supra*, are now distinguished by their own Circuit Courts, *see id.* at 770-771, ftn. 8.

### B.     Current Precedent Stands in Opposition to Defendant's Assertions that a Signed Letter of Assent is Required.

The precedent currently governing this issue sets forth that "[t]he existence of a written agreement, albeit an unsigned one, detailing the terms upon which…contributions were to be made, and [the employer's] payment of contributions in accordance with that agreement, effectively concludes our inquiry." *See id.* at 771.  The court in *Bricklayers* goes on to explain that "[u]nder these particular circumstances, section 302(c)(5)(B) and the policy concerns behind that provision are met because the contributions were made as 'specified in a written agreement with the employer.'" *See id.* at 771-772 (quoting section 302(c)(5)(B)).

The CBA and Trust Agreement detailed the terms upon which contributions were to be made, and Defendant admits to making contributions in accordance with such terms prior to

becoming delinquent in its payments, see Eskridge Dep., p. 11, and subsequent to Defendant's execution of a participation agreement, see Eskridge Dep., p. 23; Def.'s Memo., p. 5. Moreover, at no time during Defendant's period of delinquent payments did Defendant terminate its membership in the National Electrical Contractors Association. See Eskridge Dep., pp. 13, 17-18. In the end, section 302(c)(5)(B) has been met, Defendant is bound to delinquent contributions, and Defendant's Motion should be denied.

                                              Respectfully submitted,

                                              /s/ Robert B. Greenberg
                                              Asher, Gittler, Greenfield & D'Alba, Ltd.
                                              200 West Jackson Boulevard
                                              Suite 1900
                                              Chicago, Illinois 60606
                                              (302) 263-1500
                                              IL ARDC#: 01047558

**CERTIFICATE OF SERVICE**

     ROBERT B. GREENBERG, being duly sworn, says that he is an Attorney associated with Asher, Gittler, Greenfield & D'Alba, Ltd., Attorneys for Plaintiffs in this action, and that Service was accomplished pursuant to ECF as to Filing Users, and Counsel shall comply with LR 5.5 as to any party who is not a Filing User or represented by a Filing User.

                                        /s/ Robert B. Greenberg
                                        Asher, Gittler, Greenfield & D'Alba, Ltd.
                                        200 West Jackson Boulevard
                                        Suite 1900
                                        Chicago, Illinois 60606
                                        (312) 263-1500
                                        IL ARDC#:  01047558